UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                            Chapter 7

Mid-America Diesel, Inc.,                                         Case No. 15-50755

　　　　　Debtor.                                                 Hon. Phillip J. Shefferly
_____/

**ORDER AWARDING ADDITIONAL SANCTIONS FOR
FAILURE TO COMPLY WITH PREVIOUS COURT ORDERS**

This order is the latest in a long running saga regarding the failure of Carl S. Spencer, Sr.

("Spencer") to comply with orders of this Court. Spencer is the president of Mid-America Diesel,

Inc. ("Debtor"), which filed this Chapter 7 case on July 17, 2015. From the time this case was filed,

the Chapter 7 Trustee has had to pull teeth to get Spencer to produce information to the Trustee to

enable the Trustee to administer this Chapter 7 estate. At a hearing scheduled for July 18, 2016, the

Court was about to rule on the Trustee's most recent request to impose sanctions against Spencer

because of his continued failure to comply with this Court's orders when Spencer and the Trustee

informed the Court that Spencer had filed his own Chapter 11 case on Sunday, July 17, 2016. The

parties argued as to whether or not Spencer's Chapter 11 case prevented the Court from making its

ruling. The Court took the matter under advisement and is now prepared to make its ruling. To give

context to the ruling, it is necessary to first review the history of this case.

On March 31, 2015, the Debtor filed Chapter 11 case no. 15-45134. Spencer signed the

petition as the Debtor's president. On June 1, 2015, the United States Trustee ("UST") filed a

motion to convert the case to Chapter 7. The Debtor reached an agreement with the UST to resolve

the motion by entering into a stipulation to dismiss the case.  Pursuant to the stipulation, the Court dismissed the case on July 5, 2015.

Ten days later, on July 17, 2015, the Debtor tried again.  This time, the Debtor filed a Chapter 7 case, again signed by Spencer as the president of the Debtor.  On September 2, 2015, the Court entered an order (ECF No. 17) ("Rule 2004 Order") for a Rule 2004 examination of the Debtor on the stipulation of the Trustee and the Debtor.  The Rule 2004 Order provided for Spencer, as the Debtor's responsible person, to turn over various documents relating to the Debtor's businesses and to submit to an examination regarding the financial affairs of the Debtor.  Unfortunately, Spencer did not comply with the Rule 2004 Order.  As a result, on October 30, 2015, the Trustee filed a motion for sanctions against Spencer.  Following a hearing, the Court entered on December 9, 2015 an order (ECF No. 27) ("First Sanctions Order") granting the Trustee's motion for sanctions.  The First Sanctions Order required Spencer to produce the documents required by the Rule 2004 Order by a date certain and imposed a sanction of $1,250.00 against Spencer for the fees and costs incurred by the Trustee resulting from Spencer's violation of the Rule 2004 Order.

Spencer did not comply with the First Sanctions Order either.  On February 5, 2016, the Trustee filed a second motion for sanctions.  The Debtor did not respond to this motion.  On March 2, 2016, the Court entered an order (ECF No. 30) ("Second Sanctions Order") imposing additional sanctions of $1,000.00 on Spencer and finding Spencer to be in contempt of the Rule 2004 Order.

Like the prior orders of the Court, the Second Sanctions Order also proved ineffective.  On March 16, 2016, the Trustee filed an affidavit (ECF No. 38) requesting the Court to issue an order directing Spencer to appear and show cause why the Court should not impose yet still more

sanctions on Spencer for his non-compliance with the Rule 2004 Order, the First Sanctions Order and the Second Sanctions Order. On March 24, 2016, the Court entered an order (ECF No. 39) ("Show Cause Order") granting the Trustee's motion and requiring Spencer to appear at a show cause hearing on April 11, 2016. The Show Cause Order also spelled out potential sanctions of a very substantial nature requested by the Trustee.

Spencer and his attorney appeared at the show cause hearing. Spencer admitted that he had not paid the monetary sanctions that the Court had previously imposed, and that he had not produced all of the documents required by the Rule 2004 Order, nor had he sat for a Rule 2004 examination. However, Spencer asked the Court to decline to grant the remedy requested by the Trustee: a judgment against Spencer for $225,105.13, which the Trustee described as the amount shown on an accounts receivable aging as owing to the Debtor by its customers. The Trustee reasoned that a sanction in that amount was warranted because Spencer's failure to comply with the Rule 2004 Order, the First Sanctions Order and the Second Sanctions Order had prevented the Trustee from collecting and administering the Debtor's accounts receivable.

At the end of the hearing, the Court determined to grant some of the relief requested by the Trustee, but declined to grant other more significant relief requested by the Trustee. Despite the fact that Spencer conceded that he had not complied with the Court's prior orders, the Court denied the Trustee's request for a judgment in the amount of what the Trustee believes to be the Debtor's accounts receivables. The Court explained that a judgment in such a large amount would be unnecessarily punitive. In part, the Court did so because Spencer identified some medical issues that had contributed to his failure to comply with the Court's orders. However, the Court did impose another sanction of $1,500.00 on Spencer, and then adjourned the show cause hearing to give him

yet another opportunity to comply with the Court's prior orders. The Court adjourned the show cause hearing to July 11, 2016 to give Spencer sufficient time to turn over all of the documents that had been previously ordered, sit for a Rule 2004 examination, and otherwise comply with the Rule 2004 Order, the First Sanctions Order and the Second Sanctions Order. The Court memorialized its ruling in yet another order (ECF No. 45) ("Third Sanctions Order"). Given this three month adjournment, the Court fully expected that Spencer would by then finally have complied with all of the orders and that would be the end of this matter. That did not turn out to be the case.

On July 11, 2016, Spencer failed to appear at the adjourned show cause hearing, although his counsel did so. Spencer's counsel conceded that additional sanctions were warranted because Spencer still had not complied with the Rule 2004 Order, the First Sanctions Order, the Second Sanctions Order or the Third Sanctions Order, despite the lenient schedule given to him by the Court. The Trustee renewed his request for additional relief against Spencer, including his request for the entry of a judgment of $225,105.13, which represented the amount of the accounts receivable shown on the Debtor's records. Later during the hearing, the Trustee reduced the amount of the judgment he was requesting to $103,000.00. The Trustee explained that this lesser amount was calculated by the Trustee after he received a more recent accounts receivable aging report from the Debtor. Given the substantial size of the judgment requested by the Trustee, the Court took the matter under advisement and indicated that it would make a ruling on the record on July 18, 2016.

When the adjourned show cause hearing was called on July 18, 2016, Spencer's counsel appeared and informed the Court about Spencer's newly filed Chapter 11 case. That led to an extended discussion about whether the Court could make a ruling on the Trustee's request for

additional sanctions or whether any such ruling would be stayed by application of the automatic stay in Spencer's Chapter 11 case under § 362(a) of the Bankruptcy Code. That brings us to today.

Before ruling on the Trustee's request for additional sanctions, the Court must first address what effect, if any, the automatic sty in Spencer's Chapter 11 case has on this Court's ability to make any ruling.

> As a general rule, the filing of a bankruptcy petition operates to stay, among other things, the continuation of a judicial proceeding against the debtor that was commenced before the petition. But the automatic stay protection does not apply in all cases; there are statutory exemptions, and there are non-statutory exceptions.

Dominic's Restaurant of Dayton, Inc. v. Mantia, 683 F.3d 757, 760 (6th Cir. 2012) (citing In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 901 n.5 (6th Cir. 2009) and N.L.R.B. v. Edward Cooper Painting, Inc., 804 F.2d 934, 939 (6th Cir. 1986)).

The statutory exception cited by the Trustee is § 362(b)(4), which excepts from the operation of paragraphs (1), (2), (3) or (6) of the stay under § 362(a)

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.

11 U.S.C. § 362(b)(4). The term "governmental unit" is defined in § 101(27) of the Bankruptcy Code as including a "department, agency, or instrumentality of the United States[.]" This Court is a governmental unit.

The leading case in the Sixth Circuit under § 362(b)(4) is Chao v. Hospital Staffing Services, Inc., 270 F.3d 374 (6th Cir. 2001). "To determine whether an action qualifies as a proceeding pursuant to a governmental unit's police or regulatory power, and therefore falls outside the ambit of the automatic stay, this court applies two tests: the pecuniary purpose test and the public

policy test." Id. at 385 (internal quotation marks and citations omitted). The pecuniary purpose test "focus[es] on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property," which is subject to the stay, and "matters of public safety," which are excepted from the stay. Id. (internal quotation marks and citations omitted). The public policy test "distinguish[es] between proceedings that adjudicate private rights," which are subject to the stay, and proceedings "that effectuate public policy," which are excepted from the stay. Id. at 385-86 (internal quotation marks and citations omitted).

The Sixth Circuit's non-statutory basis for holding that the automatic stay does not stay certain contempt proceedings lies in a court's inherent powers. In Dominic's Restaurant of Dayton v. Mantia, the "sole issue presented . . . [was] whether the automatic bankruptcy stay should preclude further proceedings in contempt that are civil in nature." 683 F.3d at 760. In affirming the district court's ruling that the stay did not preclude such proceedings, the Sixth Circuit held that

> "[i]t is within a court's inherent power to take whatever steps [are] necessary to ensure those persons within its power comply with its orders. [We] cannot conceive that Congress intended to strip [a] court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders would be rendered almost meaningless."

Id. at 761 (quoting In re Rook, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989)) (other citation omitted).

Even after finding that a contempt proceeding is excepted from § 362(a)'s stay, a court is still limited in the actions it may take. In N.L.R.B. v. Edward Cooper Painting, Inc., 804 F.2d 934 (6th Cir. 1986), a corporation filed for bankruptcy after it was found to have engaged in unfair labor practices. The NLRB determined that continuation of the action was excepted from the stay and continued the enforcement proceeding, ordering the corporation to reimburse employees and the union. On appeal, the Sixth Circuit found that the action was excepted from the stay under

-6-

§ 362(b)'s policy and regulatory power exceptions, and the NLRB did not need to seek relief from the stay to continue the proceeding. However, the court cautioned that, although a court may "fix the amount of penalties, up to and including *entry* of a money judgment," any "attempts to *enforce* the money judgment are subject to the automatic stay." Id. at 942-43 (citations omitted).

The proceedings before this Court regarding Spencer are excepted from the automatic stay in Spencer's Chapter 11 case both under the statutory exception set forth in § 362(b)(4), because enforcement of this Court's orders effectuates public policy, and the non-statutory exception recognized by the Sixth Circuit, because enforcement of this Court's orders is an exercise of the Court's inherent powers to compel compliance with its orders. Chao, 270 F.3d at 385-86; Dominic's Restaurant, 683 F.3d at 761. Spencer's Chapter 11 case does not stay this Court from making a ruling on the Trustee's request for additional sanctions against Spencer because of his non-compliance with the four orders entered by the Court in this case and his failure to purge the finding of contempt that the Court has made against him.

The Court turns next to the specific sanctions requested by the Trustee – i.e., a judgment against Spencer for $103,000.00, which is the amount of the Trustee's calculation of the Debtor's outstanding accounts receivable. Section 105(a) of the Bankruptcy Code unquestionably provides the Court with the power to impose sanctions on a party that disobeys a bankruptcy court order. Under § 105(a), a bankruptcy court has the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [ ] title 11," including the ability to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." In addition to this express statutory authority, "[b]ankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper

-7-

conduct." Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477 (6th Cir. 1996).

The tough question for the Court is not whether it has the power to grant the relief requested by the Trustee – it does – but rather, whether it is appropriate to do so in this case. The record made at the several hearings in this case demonstrates Spencer's serial non-compliance with this Court's orders. The Court has already found Spencer to be in contempt. But the bankruptcy court's powers are limited to civil contempt, not criminal contempt. The difference is important. The purpose of civil contempt is to compel obedience to a court order and compensate for injuries caused by non-compliance. In contrast, the purpose of criminal contempt is to punish. The Court agrees with the Trustee that Spencer has not shown that he takes this Court's orders seriously, and that a substantial monetary award is required to motivate Spencer to comply with the Court's orders. The Court further agrees that the record shows that it must be in an amount significantly greater than any award imposed to date. However, the Court does not find that a judgment in the amount of $103,000.00 is necessary to accomplish this purpose. The sanctions imposed to date add up to only $3,750.00. A judgment in the amount of $103,000.00 is a multiple of approximately 28 times that amount. Before the Court would impose such a large award, the Court would need to find that lesser sums are insufficient to motivate Spencer to comply with the Court's orders.

Even if the Court were to agree with the Trustee that a judgment for $103,000.00 is what is needed to motivate Spencer to comply with the Court's orders in this case, the Court is not persuaded that such a large amount is necessary to compensate the Trustee for any injuries caused by Spencer's non-compliance. The $103,000.00 figure was suggested by the Trustee because it represents the aggregate of all of the positive account balances shown on an accounts receivable

summary that the Trustee recently received for the Debtor as of November 11, 2015 (ECF No. 49). But even the Trustee concedes that the entire accounts receivable aging does not show that figure, and instead reflects an overall negative figure after applying payments and offsets. The Trustee calculated the $103,000.00 by adding only those accounts that showed a positive balance. The Court understands why the Trustee has requested a judgment in such amount – because the Trustee believes that Spencer's non-compliance has prevented him from collecting these receivables – but there is not sufficient evidence in the record at this juncture to show that these accounts receivable are actually owing and could actually be collected by the Trustee in their full amount but for Spencer's non-compliance with the Court's orders. The Trustee's request is not entirely unreasonable because, after all, the Trustee has been stymied in his efforts to administer this estate by Spencer's continuing non-compliance with Court orders. But keeping in mind that the request before the Court is not for an adjudication as to whether such accounts receivables are or are not owed to the Debtor but, rather, for the imposition of a monetary award against Spencer to motivate him to comply with the Court's orders, the Court is not persuaded that a judgment of $103,000.00 is necessary to compensate the Trustee for any injuries suffered to date as a result of Spencer's non-compliance.

Taking into consideration the multiple instances in which Spencer has failed to comply with the Court's orders and the delay in the Trustee's administration of the assets of this estate caused by Spencer's non-compliance, the Court finds that a reasonable monetary award that will both motivate Spencer to comply and compensate the Trustee, is $5,000.00, plus $100.00 per day from each day after the entry of this order, until such time as Spencer fully complies with the Rule 2004 Order, the First Sanctions Order, the Second Sanctions Order and the Third Sanctions Order. By

full compliance, the Court means that Spencer pays to the Trustee all of the amounts required to be paid by such orders, produces for the Trustee all of the documents required by such orders and finishes testifying at the Rule 2004 examination. The daily monetary sanction will continue to accrue until such time as the Trustee has filed an affidavit of compliance, or until such time as Spencer has filed a motion requesting a declaration of compliance and the Court has adjudicated such motion in Spencer's favor.

Because Spencer is now in Chapter 11, the enforcement of this award against Spencer or property of Spencer's Chapter 11 estate is stayed under § 362(a) until further order of the Court entered in Spencer's Chapter 11 case.

**IT IS SO ORDERED.**

.

```
Signed on July 28, 2016
                                    /s/ Phillip J. Shefferly
                                Phillip J. Shefferly
                                United States Bankruptcy Judge
```

-10-